# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

JESSIE DENTON ROACH,      )
                                      )
         Petitioner,      )
                                      )
v.                             )      **Case No. 16-CV-0033-TCK-PJC**
                                      )
JOE M. ALLBAUGH,        )
                                      )
         Respondent.     )

## OPINION AND ORDER

Before the Court is the 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. # 1) filed by Petitioner Jessie Denton Roach, a state inmate appearing pro se. Petitioner claims the judgment and sentence entered against him in the District Court of Tulsa County, Case No. CF-2012-1659, is unconstitutional because (1) he received ineffective assistance of counsel during a post-plea hearing to withdraw his pleas, and (2) he received an excessive sentence. Respondent filed a response in opposition to the petition (Dkt. # 12) and provided the state court record (Dkt. ## 12, 13) necessary to adjudicate Petitioner's claims. Petitioner did not file a reply. For the reasons that follow, the Court finds that Petitioner is not entitled to federal habeas relief and denies his habeas petition.

## *BACKGROUND*

In May 2012, the State of Oklahoma charged Petitioner and his wife, Delores Roach, jointly, in the District Court of Tulsa County, Case No. CF-2012-1659, with three counts of child neglect, in violation of OKLA. STAT. tit. 21, § 843.5(C) (2011) (Counts 2, 3 and 5),

and one count of child abuse by injury, in violation of OKLA. STAT. tit. 21, § 843.5(A)

(2011) (Count 4). Dkt. # 13-1, Orig. Rec. vol. 1, at 67-70.[1] The State alleged one additional

count of child abuse by injury, in violation of OKLA. STAT. tit. 21, § 843.5(A) (2011)

(Count 1) only against Petitioner. *Id.* at 67. The State alleged that between February 29,

2012, and April 2, 2012, Petitioner and Roach physically abused and neglected Petitioner's

six-year-old stepson, J.B., by (1) failing to provide sufficient food, resulting in J.B.'s severe

malnourishment, and (2) failing to obtain or provide proper medical care for injuries J.B.

sustained through the physical abuse, including a fractured clavicle bone. *Id.* at 67-68.

On November 8, 2013, Delores Roach entered blind pleas[2] of guilty to three counts

of child neglect (Counts 2, 3, and 5), and the State dismissed the charge against her for

child abuse by injury (Count 4). Dkt. # 13-2, Orig. Rec. vol 2, at 4-13. One week later,

Petitioner, represented by Assistant Public Defender Adam Haselgren, entered blind pleas

of guilty to all five charges against him. Dkt. # 12-1, Plea of Guilty/Summary of Facts, at

2-4; Dkt. # 13-5, Tr. Plea Hr'g, at 3-13. As a factual basis for his pleas, Petitioner stated:

> Between 2/29/12 & 4/2/12 the victim J.B. was disciplined by me w/ a belt to
> his rear and excessive force was used thus causing bruising. Additionally,
> J.B. developed severe skin rash/condition that was improperly Attended to
> by me & Deloris [sic] Roach leading to delayed healing & prolonged
> scabbing. Additionally, Discipline by us led to a broken collar bone which
> was was [sic] left unattended all occurred in Tulsa Co. Additionally due to
> insufficient care by me & CoΔ J.B. became malnurished [sic].

---

[1] For consistency, the Court's record citations refer to the CM/ECF header page
number in the upper right-hand corner of each document.

[2] A "blind" plea "is a plea in which there is no binding agreement on sentencing,
and punishment is left to the judge's discretion." *Medlock v. State*, 887 P.2d 1333, 1337
n.2 (Okla. Crim. App. 1994).

Dkt. # 12-1, at 4. During the plea hearing, the trial court placed Petitioner under oath and conducted a thorough plea colloquy. Dkt. # 13-5, Tr. Plea Hr'g, at 4-8. Based on Petitioner's responses to the court's questions, the court determined that Petitioner understood (1) the charges against him and the range of punishment for each crime, (2) that he was waiving significant trial rights by entering a plea, (3) the nature and consequences of entering a blind plea, and (4) agreed with the contents of the written plea form. *Id.* at 4-9. When the court asked whether Petitioner was "pleased with" Haselgren's representation, Petitioner stated, "Yes, sir." *Id.* at 8. In response to further questions from the court, Petitioner stated that his decision to plead guilty did not result from promises, threats or coercion but that he instead chose to plead guilty "freely and voluntarily." *Id.* at 10. Finally, the court read the factual basis from the written plea form, and Petitioner confirmed that the factual basis was "correct." *Id.* at 10-11. At the conclusion of the hearing, the court accepted Petitioner's guilty pleas as knowing and voluntary, but withheld a finding of guilt. *Id.* at 11-12. The court advised Petitioner that the State would be presenting evidence at sentencing to support the State's sentencing recommendations, and that for each conviction the court could impose a sentence "between zero and life. *Id.* at 9. Haselgren told the court that he "may" present mitigation witnesses as well. *Id.*

On December 19, 2013, the trial court held a joint sentencing hearing for Petitioner and Delores Roach. Dkt. # 13-6, Tr. Sent. Hr'g, at 4. Haselgren represented Petitioner at the hearing. *Id.* J.B., who was eight years old at the time of sentencing, testified *in camera* about the regular beatings Petitioner gave him, most often with a belt, and Petitioner's insistence that J.B. eat meals within a short time frame at the risk of additional beatings.

3

*Id.* at 5-17.[3]  The State also presented testimony from J.B.'s pediatrician, J.B.'s then-current foster mother, and J.B.'s former foster mother, regarding the extent and seriousness of J.B.'s injuries, his development after he was removed from Petitioner and Roach's home, and J.B.'s long-term prognosis for recovering, emotionally and physically, from the abuse. *Id.* at 3, 27-91.  Relying on this evidence, the State recommended consecutive life sentences. *Id.* at 101-02.

Haselgren did not call any witnesses at the hearing, but he cross-examined each of the State's witnesses.  Dkt. # 13-6, Tr. Sent. Hr'g, at 3.  Through cross-examination, Haselgren elicited testimony that Petitioner and Roach sought treatment for J.B.'s head injuries and consulted with doctors about J.B.'s "failure to thrive." *Id.* at 51-56, 60-62.  Haselgren urged the court to impose "a probated sentence" based on Petitioner's efforts to seek treatment for J.B.'s injuries, Petitioner's age (51), and Petitioner's lack of prior criminal history. *Id.* at 106-10.

Following the presentation of evidence and arguments, the trial court adjudged Petitioner guilty, imposed life sentences on Counts 1 and 4, to be served consecutively, and imposed 25-year prison terms on Counts 2, 3 and 5, to be served concurrently with each

---

[3] By the time of the sentencing hearing, J.B. had changed his name.  Dkt. # 13-8, at 17.  To avoid confusion, this Court, like Respondent, will refer to the victim as J.B. *See* Dkt. # 8, at 4 n.5.

4

other and with the consecutive life sentences.[4]  Dkt. # 13-6, Tr. Sent. Hr'g, at 112-13.  The

trial court advised Petitioner (1) that he would "have ten days from [the hearing] to file an

application to withdraw [the] plea," (2) that if Petitioner moved to withdraw his pleas the

court would hold a hearing within 30 days, and (3) that Petitioner would "have ten days to

appeal [the court's] decision to the Court of Criminal Appeals" if the court denied his

motion.  *Id.* at 113-14.  Petitioner verbalized that he understood his appeal rights.  *Id.* at

114.

At Petitioner's request, Haselgren filed a timely motion to withdraw his pleas.  Dkt.

# 12-3.   Under the heading "ISSUES REGARDING REQUEST FOR CONFLICT

COUNSEL," Petitioner identified the basis for his motion as follows:

> In support of his motion to withdraw his plea of guilty the Defendant **[alone]**
> asserts that at the time of his sentencing, the testimony of the state's witnesses
> during the aggravation phase was incorrect and did not accurately reflect the
> true facts of the case this he alleges ultimately led to an excessively high and
> disproportionate sentence.

*Id.* at 1 (alteration in original).

The trial court held a hearing on the motion on January 29, 2014.  Dkt. # 13-8, Tr.

Mot. Hr'g, at 1.  Haselgren's colleague from the Tulsa County Public Defender's Office

(TCPDO), Assistant Public Defender Stephanie Singer, represented Petitioner at the

hearing because Haselgren had to leave the state the night before the hearing for a family

---

[4] The trial court adjudged Delores Roach guilty of three counts of child neglect
(Counts 2, 3, and 5), imposed a 20-year prison term for each conviction, and ordered the
first two terms to be served consecutively to each other and the third term to be served
concurrently with the consecutive terms.  Dkt. # 13-2, Orig. Rec. vol. 2, at 70, 73; Dkt. #
13-6, Tr. Sent. Hr'g, at 115-16.

emergency. *Id.* at 4; Dkt. # 12-7, at 13 (Singer Affidavit, dated Dec. 10, 2014). During the hearing, Singer asked Petitioner about his understanding of the plea process and about the "facts" he believed were not accurate. Dkt. #13-8, Tr. Mot. Hr'g, at 5-7. Petitioner testified he did not understand that by entering a blind plea he would not "have an appeals process." *Id.* at 6. He also testified Haselgren told him he "could turn around and withdraw [his] plea within ten days." *Id.* Singer then asked, "With respect to the factual basis that you pled guilty to, you're also saying that was incorrect, is that right?" *Id.* at 6. Petitioner responded to that and additional questions as follows:

> A. [Petitioner] The claims I pled guilty to, yes, but the other items that was brought up and introduced, no.
> Q. [Singer] Which ones are those?
> A. About beating our child. We've never beat our child. Different aspect of it. Said that this went on for years. We've never—never done anything to our child for years. If that was the case then why didn't the school turn us in? Or why didn't the doctors turn us in? Or why didn't the ERs turn us in? All of the time that he's been in and functions he's been to and all the different facilities.
> Q. Would you have entered a guilty plea if you would have known that you would not be able to withdraw it within ten days?
> A. No, I would not have.

*Id.* at 6-7. The prosecutor cross-examined Petitioner about the statements he made on the written plea form and under oath during the plea hearing. *Id.* at 7-9. Petitioner testified that he did not remember discussing with Haselgren the questions on the form relating to appeal rights. *Id.* at 8-9. Petitioner did remember that the trial court asked if he signed the form and advised him that he would have ten days "[t]o withdraw the plea." *Id.* at 9. After the court asked Petitioner several additional questions about the plea hearing, the court queried, "So what you're telling me is you thought that you could enter this plea and if you

6

changed your mind within ten days, then you believed you could get your trial rights back, is that right?" Dkt. # 13-8, Tr. Mot. Hr'g, at 9-12. Petitioner responded, "Yes, sir." *Id.* at 12. The court reminded Petitioner that the court had expressly advised him, at the plea hearing, that he could "file an application to withdraw [his] plea," obtain a hearing, and appeal an adverse ruling. *Id.* at 12-13. The court then characterized Petitioner's request to withdraw his pleas as a case of "buyer's remorse" stemming from Petitioner's dislike of "the results" of his decision to plead guilty. *Id.* at 13. To that, Petitioner responded,

> The results had nothing to do with it. I feel that a—I feel that a—I feel that we weren't represented properly because of the fact that any questions that my lawyer asked was the same answer was over and over was the fact that, well, we didn't review that part of the case. And the fact that, you know— the time doesn't matter either way because I know if I go to trial I can get more time than I have now. It's just the idea of the fact that I don't have an appeal process this way. I was come to it at the last minute with it and, basically, felt that I had to blind plea because I was told that by co-defendant filing a blind plea that I didn't have a choice.

*Id.* at 13. The court advised Petitioner that his appeal rights were "intact" and that his motion to withdraw his pleas would be denied. *Id.* at 13-14. The court subsequently filed a written order denying Petitioner's motion to withdraw his pleas. Dkt. # 12-4.

On May 9, 2014, the Oklahoma Court of Criminal Appeals (OCCA) granted Petitioner's request to file a certiorari appeal out of time. Dkt. # 12-8, at 1.

Represented by attorney Stuart Southerland, Petitioner filed a petition for writ of certiorari with the OCCA,[5] along with a supporting brief. Dkt. ## 12-5, 12-6. Petitioner raised two propositions of error:

Proposition One: The Tulsa County Public Defender's Office labored under a conflict of interest and should not have represented Petitioner at the hearing on his application to withdraw his plea. The District Court's failure to appoint conflict counsel and the ineffective representation resulting therefrom violated Petitioner's rights under the Sixth Amendment to the United States Constitution.

Proposition Two: Petitioner's sentence is excessive and should be modified.

---

[5] Under Oklahoma law "if a defendant's conviction is based on a guilty plea, he may pursue an appeal to the OCCA only by a petition for a writ of certiorari." *Clayton v. Jones*, 700 F.3d 435, 441 (10th Cir. 2012). "Although referred to as a certiorari appeal, 'Oklahoma has always treated this appeal as an appeal of right.'" *Id.* (quoting *Randall v. State*, 861 P.2d 314, 316 (Okla. Crim. App. 1993)). The rules for pursuing a certiorari appeal require a defendant to file a motion in state district court, within ten days of sentencing, seeking to withdraw the guilty plea and requesting an evidentiary hearing. Rule 4.2(A), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2019). "The application to withdraw guilty plea and the evidentiary hearing are both necessary and critical steps in securing [a certiorari] appeal." *Clayton*, 700 F.3d at 441 (quoting *Randall*, 861 P.2d at 316). If the state district court denies the motion the defendant must file a notice of intent to appeal and a designation of record in state district court within ten days from the date of the denial. Rule 4.2(D), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2019). To perfect the certiorari appeal, the defendant must then file a petition for writ of certiorari and the appellate record with the OCCA within 90 days of the denial of his motion to withdraw the plea. Rule 4.3(A), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2019). The time periods for filing a notice of intent to appeal and for perfecting the certiorari appeal are both jurisdictional; thus, failure to comply with either constitutes waiver of the right to appeal. *See* Rules 4.2(D) & 4.3. However, the OCCA may grant permission to file a certiorari appeal out of time if the petitioner can prove he "was denied an appeal through no fault of [his] own." Rule 2.1(E)(1), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2019). Finally, because Oklahoma treats a certiorari appeal as an appeal of right, the OCCA has held "that a hearing on a[n] application to withdraw guilty plea is a 'critical stage' which invokes a defendant's right to counsel." *Randall*, 861 P.2d at 316.

Dkt. # 12-6, at 3. Petitioner also requested an evidentiary hearing on his ineffective-assistance-of-counsel claim. Dkt. # 12-7; *see* Rule 3.11(B)(3)(b), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2019) (establishing procedures for requesting evidentiary hearing). He alleged a hearing was necessary "to establish prejudice resulting from his attorney's alleged conflict and resulting ineffective performance during his January 29, 2014, hearing on his motion to withdraw his plea." Dkt. # 12-7, at 1. Petitioner submitted an affidavit from himself and from his plea withdrawal counsel, Singer, to support his claim that Singer "suffered from a conflict of interest in the plea withdrawal proceedings" and "was simply not prepared to present evidence" at the hearing, particularly evidence supporting his complaints about Haselgren's failure to adequately represent him at the sentencing hearing. *Id.* at 3-5.

By unpublished summary opinion filed February 18, 2015, in Case No. C-2014-450, the OCCA denied Petitioner's request for an evidentiary hearing, denied his certiorari appeal, and affirmed his judgment and sentence. Dkt. # 12-8, *Roach v. State*, No. C-2014-450 (Okla. Crim. App. 2015) (unpublished) (hereafter, "OCCA Op."), at 3. Before addressing Petitioner's claims, the OCCA stated that its review of the denial of a motion to withdraw a plea is generally limited to determining (1) whether the plea was knowing and voluntary and (2) whether the state district court had jurisdiction to accept the plea. *Id.* at 2 (citing *Lewis v. State*, 220 P.3d 1140, 1142 (Okla. Crim. App. 2009)). The OCCA described Petitioner's petition for writ of certiorari as "focus[ing] on his claims that (a) had his attorney been prepared to rebut the State's evidence at the sentencing hearing, he would not have received such lengthy sentences, and (b) he should not have been represented by

the Tulsa County Public Defender's office at the hearing on this motion to withdraw." *Id.* The OCCA stated, "[a]lthough both the propositions are properly raised under our Rules, fundamentally [Petitioner] does not claim he would not have entered his pleas, and this is not an appropriate petition for writ of certiorari." *Id.* The OCCA nevertheless addressed both of Petitioner's claims on the merits and rejected them. *Id.* at 2-3.

Petitioner filed the instant federal habeas petition (Dkt. # 1) on January 20, 2016.

## DISCUSSION

Petitioner seeks federal habeas relief on two grounds:

| | |
|---|---|
| Ground One: | <u>Ineffective Assistance of Counsel</u> Public Defender laboured [sic] under conflict of interest District court not assigning conflict counsel violated Petitioner's Rights. |
| Ground Two: | Petitioner's sentence is excessive and should be modified. |

Dkt. # 1, at 4, 14.[6]

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) guides and limits this Court's review of Petitioner's claims. Under the AEDPA, a federal court may grant habeas relief to a state prisoner "only on the ground that [the prisoner] is in custody

---

[6] Petitioner provides supporting facts and arguments for each ground in his petition. Dkt. # 1, at 4-12, 14-20. He also filed a seven-page supporting brief (Dkt. # 2) that consists of a table of contents, a list of authorities, and a summary of facts, all of which appear to be drawn from his state appeal brief. Even liberally construed, this brief contains no readily discernable arguments to support Petitioner's habeas claims. *See Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009) (noting that courts should liberally construe pleadings and papers filed by pro se litigants, but courts should not "act as [the litigant's] advocate"). As a result, the Court will consider only the arguments advanced in the habeas petition.

in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."). Before a federal court may grant habeas relief, a state prisoner must exhaust available state-court remedies, 28 U.S.C. § 2254(b)(1)(A), by "fairly present[ing] the substance of his federal habeas claim[s] to state courts," *Hawkins v. Mullin*, 291 F.3d 658, 668 (10th Cir. 2002). In addition, the prisoner ordinarily must file a federal habeas petition within one year of the date on which his convictions became final. 28 U.S.C. § 2244(d)(1).

Respondent concedes, and the Court finds, that the petition is timely and that both of Petitioner's claims appear to be exhausted. Dkt. # 12, at 2-3. Respondent contends, however, that 28 U.S.C. § 2254(d) bars habeas relief on Petitioner's first claim and that Petitioner's second claim alleges only an error of state law, not a cognizable habeas claim. *Id.* at 7, 29.

Under § 2254(d), when a state court adjudicates the merits of a state prisoner's federal claims, a federal court may not grant habeas relief unless the prisoner shows that the state court's adjudication of those claims either (1) "resulted in a decision that was contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States," *id.* § 2254(d)(1); (2) "resulted in a decision that . . . involved an

unreasonable application of clearly established Federal law," *id.*;[7] or (3) "resulted in a decision that was based on an unreasonable determination of the facts" in light of the record presented to the state court, *id.* § 2254(d)(2).

When a state prisoner's federal claim is subject to review under § 2254(d)(1), the federal court's first task is to identify the Supreme Court precedent governing that claim. *House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008). "The absence of clearly established federal law is dispositive under § 2254(d)(1)." *Id.* However, if clearly established federal law governs the claim, the federal court must "ask whether the state court decision is either contrary to or an unreasonable application of such law." *Id.*

"A state-court decision is contrary to clearly established federal law . . . if it 'applies a rule that contradicts the governing law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from that precedent.'" *Smith v. Duckworth*, 824 F.3d 1233, 1241 (10th Cir. 2016) (quoting *Ryder ex rel. Ryder v. Warrior*, 810 F.3d 724, 739 (10th Cir. 2016)). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Terry Williams*, 529 U.S. at 405 (citation omitted).

---

[7] For purposes of § 2254(d)(1), "clearly established Federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the United States Supreme Court's] decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (quoting *Terry Williams v. Taylor*, 529 U.S. 362, 405, 412 (2000) (*Terry Williams*).

A state-court decision involves an unreasonable application of clearly established federal law "if the decision 'correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case.'" *Fairchild v. Trammell*, 784 F.3d 702, 711 (10th Cir. 2015) (quoting *Terry Williams*, 529 U.S. at 407-08). An unreasonable application of clearly established federal law may also arise "if the state court 'either unreasonably extends a legal principle from [Supreme Court] precedent to a new context . . . or unreasonably refuses to extend that principle to a new context." *Terry Williams*, 529 U.S. at 407. In either situation, an unreasonable application must be "objectively unreasonable", *id.* at 409, "not merely wrong," *White v. Woodall*, 572 U.S. 415, 419 (2014).

"[W]hen a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim," the federal court must determine whether the state-court decision rests on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Burt v. Titlow*, 571 U.S. 12, 18 (2013); 28 U.S.C. § 2254(d)(2). A federal court must also presume the correctness of a state court's factual findings unless the petitioner rebuts the presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The Supreme Court has stated that the standard set out in § 2254(e)(1) is "arguably more deferential" than the one set out in § 2254(d)(2). *Wood v. Allen*, 558 U.S. 290, 301 (2010). But the Supreme Court has "not defined the precise relationship between § 2254(d)(2) and § 2254(e)(1)." *Burt*, 571 U.S. at 18. Instead, the Supreme Court has found it suffices to say that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood*, 558 U.S. at 301 (2010).

13

Ultimately, the AEDPA requires federal habeas courts to give state court decisions the "benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002), with respect to federal claims "already rejected in state proceedings," *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Thus, before a federal court can grant habeas relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 102-03.

## I.     Ineffective assistance of counsel

In his first claim for relief, Petitioner contends he was denied his right to effective assistance of counsel at the hearing on his motion to withdraw his pleas. Dkt. # 1, at 4-12. Petitioner's claim appears to rest on the same two arguments he advanced in state court. First, he alleges he was denied conflict-free counsel because once he complained about Haselgren's representation, the TCPDO had a conflict and neither Haselgren nor Singer could represent him on his motion to withdraw his pleas. Dkt. # 1, at 4-12. Second, he alleges that even if Singer did not have a conflict she provided ineffective assistance at the hearing because (1) she had no knowledge of his case or of the actual reasons for his motion, (2) she failed to ask for a continuance so she could adequately consult with Petitioner about the true reasons for his motion, and (3) she failed to call Haselgren to testify at the hearing. *Id.* at 4-5, 12.

The OCCA considered and rejected both arguments. First, the OCCA noted that Petitioner failed to offer "law relevant to this case" supporting "his claim that the [TCPDO]

14

itself had a conflict and Singer should not have been allowed to represent him at [the motion] hearing." Dkt. # 12-8, OCCA Op., at 2. Thus, it found that Petitioner "was represented by conflict-free counsel at the hearing on his motion to withdraw." *Id.* Second, citing *Lozoya v. State*, 932 P.2d 22, 31 (Okla. Crim. App. 1996), the OCCA stated that to prevail on his claim that Singer was generally ineffective, Petitioner was required to "show that counsel's acts or omissions fell below an objective standard of reasonableness, and that he was prejudiced by counsel's conduct." *Id.* at 3. The OCCA further stated that, in the context of challenging a conviction arising from a plea, a defendant would ordinarily have to "show that, but for counsel's errors, he would not have entered the plea." *Id.* (citing *Lozoya*, 932 P.2d at 31). The OCCA then stated,

> Of course, [Petitioner] is not claiming that, were it not for Singer, he would not have entered a plea. He appears to claim instead that, had Singer represented him effectively, he would have been allowed to withdraw his plea. This would be speculative even with more substantial evidence than [Petitioner] provides. Contrary to [Petitioner's] assertion, an attorney in Singer's position is not required to call or cross-examine previous counsel, and failure to do so does not automatically render the attorney ineffective.

*Id.* at 3. Ultimately, the OCCA found that Singer "was not ineffective in her representation at the hearing on the motion to withdraw." *Id.* at 2-3.

Respondent argues that § 2254(d) bars relief on Petitioner's ineffective-assistance-of-counsel claim because the OCCA's decision was neither based on an unreasonable application of clearly established federal law nor based on an unreasonable determination of the facts. Dkt. # 12, at 7-29. The Court agrees.

"[O]nce the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the

criminal proceedings." *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009). The right to counsel includes "a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981). However, to prevail on a conflict-of-counsel claim, "a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). A potential conflict of interest can arise in various situations, but "that potential will only be converted to an *actual* conflict of interest if, over the course of litigation, the defendant's interests actually clash with his attorney's interests." *United States v. Williamson*, 859 F.3d 843, 852 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 1324 (2018).

"An actual conflict of interest therefore means a 'conflict that *affected counsel's performance*—as opposed to a mere theoretical division of loyalties.'" *Id.* (emphasis in original) (quoting *Mickens v. Taylor*, 535 U.S. 162, 171 (2002). Stated another way, "an actual conflict exists when 'counsel [is] forced to make choices advancing other interests to the detriment of his client.'" *Id.* (alteration in original) (quoting *United States v. Alvarez*, 137 F.3d 1249, 1252 (10th Cir. 1998)). "An actual conflict can support an ineffective assistance of counsel claim where the conflict prejudiced the defendant's representation." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984)). And a reviewing

court must apply the familiar two-part test from *Strickland* to determine whether a defendant has "demonstrate[d] prejudice flowing from the conflict." *Id.* at 852, 856.[8]

Here, the OCCA identified and applied the correct governing legal principles when it found that Singer did not have an actual conflict of interest and that she did not provide constitutionally ineffective representation. Dkt. # 12-8, OCCA Op., at 2-3.[9] As stated, Petitioner had to show that the alleged conflict of interest "adversely affected [Singer's] performance." *Sullivan*, 446 U.S. at 350. And, because Petitioner's situation did not arise in the context of multiple representation, the OCCA was required to "consider the facts and circumstances of the case under the commands of *Strickland* before deciding if there was"

---

[8] In *Williamson*, the United States Court of Appeals for the Tenth Circuit explained that

> [a]fter *Mickens*, a potential conflict of interest that is not a multiple representation conflict—regardless of whether it is raised prior to trial—does not fall under *Holloway*[ *v. Arkansas*, 435 U.S. 475, 98 S. Ct. 1173, 55 L.Ed.2d 426 (1978)]'s "duty to inquire" into potential conflicts of interest. Only if a court knows or has reason to know of an actual conflict must it do more. And even if the court fails to inquire into an actual conflict, the automatic reversal rule will not apply. Instead, on appellate review, the court will consider the facts and circumstances of the case under the commands of *Strickland* before deciding if there was constitutional error.

*Williamson*, 859 F.3d at 856.

[9] The OCCA did not cite *Sullivan*, *Mickens*, or any other Supreme Court precedent in discussing Petitioner's conflict-of-counsel claim. Dkt. # 12-8, OCCA Op., at 2. Regardless, this Court must still apply § 2254(d)(1) in reviewing this claim. *See Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (reiterating that a "state court need not even be aware of [the Supreme Court's] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them'" (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002))); *Miller v. Mullin*, 354 F.3d 1288, 1292-93 (10th Cir. 2004) (discussing that federal habeas court must apply § 2254(d) "notwithstanding the [OCCA's] failure to cite or discuss federal case law").

a Sixth Amendment violation. *Williamson*, 859 F.3d at 856. Because the OCCA applied these principles, the only questions for this Court are (1) whether, under § 2254(d)(1), the OCCA's application of the law was "objectively unreasonable" *Terry Williams*, 529 U.S. at 409, and (2) whether, under § 2254(d)(2), the OCCA's decision is based on an unreasonable factual determination, *Wood*, 558 U.S. at 301 (2010).

Having reviewed the state-court record, the Court finds nothing unreasonable about the OCCA's application of the law or determination of the facts with respect to either aspect of Petitioner's ineffective-assistance-of-counsel claim. The record reflects that Petitioner entered knowing and voluntary guilty pleas while represented by Haselgren and, at the time of his plea hearing, Petitioner voiced no complaints about Haselgren's representation. Dkt. # 12-1, Plea of Guilty/Summary of facts, at 2-4; Dkt. # 13-5, Tr. Plea Hr'g, at 3-13. Petitioner's written motion to withdraw his pleas contained a heading that mentioned a "request for conflict counsel" followed by a vague assertion that Petitioner sought to withdraw his pleas because the State presented "incorrect" evidence at sentencing, resulting in an excessive sentence. Dkt. # 12-3, at 1. Singer stepped in for Haselgren on the morning of the plea withdrawal hearing, was unfamiliar with Petitioner's case, and did not speak to Haselgren about his representation of Petitioner before the hearing. Dkt. # 13-8, Tr. Mot. Hr'g, at 4; Dkt. # 12-7, at 13. During her brief consultation with Petitioner before the plea withdrawal hearing, Petitioner and Singer discussed Petitioner's concerns that he did not fully understand of the plea process or that "he waiving his appeal rights when he plead[ed] guilty in a blind plea." Dkt. # 12-7, at 13. According to Singer, she and Petitioner did not discuss his sentencing hearing or whether he had complaints about

Haselgren's performance at the sentencing hearing. *Id.* With his request for an evidentiary hearing in state court, Petitioner submitted an affidavit to the OCCA that did not directly contradict, and appears consistent with, Singer's recall of their pre-hearing discussion. Dkt. # 12-7, at 10-12. Petitioner stated in his affidavit that he spoke with "an assistant to Mr. Haselgren" on "the night before the plea withdrawal hearing" and "relayed his concerns to the assistant, including [his] feeling that [he] had not been represented properly during the proceedings by the Public Defender's Office." *Id.* at 11. He further stated that he met Singer for the first time on the morning of the hearing "and did not have a chance to talk to her about [his] case until immediately prior to the hearing." *Id.* Significantly, Petitioner did not state in his affidavit that he told Singer about his belief that Haselgren did not properly represent him at the sentencing hearing. *Id.* at 10-12. In short, nothing in the record suggests that either Singer or the trial court knew or should have known before the plea withdrawal hearing that Petitioner moved to withdraw his pleas based on his concerns about Haselgren's representation.

During the plea withdrawal hearing, Singer questioned Petitioner about his understanding of the blind plea and his appeal rights. Dkt. # 13-8, Tr. Mot. Hr'g, at 5-7. She also questioned him about the facts he believed were inaccurate. *Id.* In a rambling response, Petitioner essentially disputed the veracity of the facts he presented to the court to support his guilty pleas. *Id.* at 6. Near the end of the hearing, when the trial court suggested Petitioner was simply not pleased with the "results" of his decision to plead guilty, Petitioner asserted he was not "represented properly," appeared to maintain that his primary complaint was the loss of his "appeal process," and suggested his plea was coerced

because he felt he had no "choice" but to enter a blind plea. *Id.* at 13. Even these statements from Petitioner do not directly support that the "true reason" for moving to withdraw his plea was his concern that Haselgren performed deficiently during the plea or sentencing hearing.

On this record, the OCCA found that Singer was "conflict-free," and, applying *Strickland*,[10] determined that Petitioner failed to show either that Singer performed deficiently at the plea withdrawal hearing or that her performance prejudiced Petitioner. Dkt. # 12-8, OCCA Op., at 2-3. Having considered the arguments and authorities cited by both parties, the Court agrees with Respondent that the OCCA's adjudication of Petitioner's ineffective-assistance-of-counsel claim is neither based on an unreasonable application of clearly established federal law nor based on an unreasonable determination of the facts presented in state court. Thus, as Respondent contends, § 2254(d) bars habeas relief on Ground One.

## II.     Excessive sentence

In his second claim for relief, Petitioner alleges his sentence is excessive under the facts of his case. Dkt. # 1, at 14. More specifically, he states,

> I had not spanked my stepson in over a month and a half, so bruise on leg was not from us spanking him. Broken clavicle was not even possible because he never cried with it. That is most painful injury for a child he had a broken clavicle 4 yrs earlier and we returned from trip to take him to hospital. Thought wife new [sic] best about medical. The available facts do

---

[10] The OCCA did not cite *Strickland* in assessing either aspect of Petitioner's ineffective-assistance-of-counsel claim. Dkt. # 12-8, OCCA Op., at 3. However, it cited one of its own prior cases, *Lozoya*, 932 P.2d 22, 31, which, in turn, cited *Hill v. Lockhart*, 474 U.S. 52 (1985), the Supreme Court case establishing how to apply *Strickland* in the context of a guilty plea. Dkt. # 12-8, OCCA Op., at 3.

> not coincide. This being first offense and being told that possibly would get probation even though sentencing guidelines are 0-life. (Lafler v. Cooper) 132 S. Ct. 1376 (2012)[.]

Dkt. # 1, at 14. As he did in state court, Petitioner argues that his sentence "shocks the conscience" because the specific facts of the case do not "justify the imposition of what amounts to a no-parole 76 year prison term." *Id.* at 16. The OCCA rejected Petitioner's sentencing claim, succinctly stating, "taking into account all the facts and circumstances, [Petitioner's] sentences are not excessive." Dkt. # 12-8, OCCA Op., at 3.

Respondent argues that Petitioner is not entitled to relief on this claim because he alleges only an error of state law, not a cognizable federal habeas claim. *Id.* at 29-39. The Court agrees.

Generally, a claim that a particular sentence is "excessive" is not cognizable on habeas review. *See Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000) (noting that sentencing claims "are not generally constitutionally cognizable, unless it is shown the sentence imposed is outside the statutory limits or unauthorized by law"). As a result, federal habeas review ordinarily ends upon the federal court's determination that "the sentence is within the limitation set by statute." *Id.*

Petitioner was convicted, upon his guilty pleas, of two counts of child abuse by injury, in violation of OKLA. STAT. tit. 21, § 843.5(A) (2011) and three counts of child neglect, in violation of OKLA. STAT. tit. 21, § 843.5(C) (2011). Dkt. # 12-1; Dkt. # 13-5, Tr. Plea Hr'g, at 11-12. For each of these convictions Oklahoma law authorizes a sentence "not exceeding life imprisonment." OKLA. STAT. tit. 21, § 843.5(A), (C). In addition, Oklahoma law grants state district courts discretion to impose consecutive or concurrent

sentences "[i]f the defendant has been convicted of two or more offenses." OKLA. STAT. tit. 22, § 976. Here, the trial court imposed two life sentences and three 25-year prison terms. Dkt. # 13-6, Tr. Sent. Hr'g, at 112-13. The trial court ordered the life sentences to be served consecutively. *Id.* Because neither the length of Petitioner's sentences nor the trial court's decision to run the life sentences consecutively to each other contravenes Oklahoma law, Petitioner's claim that he received an excessive sentence is not cognizable on habeas review. For this reason, the Court denies the habeas petition as to Ground Two.

## *CONCLUSION*

Based on the foregoing analysis, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). The Court therefore denies his petition for a writ of habeas corpus.

## **Certificate of Appealability**

Rule 11, *Rules Governing Section 2254 Cases in the United States District Courts*, requires a district court "issue or deny a certificate of appealability when it enters a final order adverse to the [petitioner]." The district court may issue a certificate of appealability (COA) "only if the [petitioner] has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court denies a habeas petition by rejecting the merits of a petitioner's constitutional claims, the petitioner must show "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). However, when the district court denies the habeas petition on procedural grounds, the petitioner must

show both "[1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

For the reasons discussed in the analysis section of this Opinion, the Court finds that reasonable jurists would not debate the correctness of this Court's assessment of Petitioner's ineffective-assistance-of-counsel claims or that his sentencing claim fails to state a valid claim of the denial of a constitutional right. The Court thus declines to issue a certificate of appealability as to either claim.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. The petition for a writ of habeas corpus (Dkt. # 1) is **denied**.

2. A certificate of appealability is **denied**.

3. A separate judgment shall be entered herewith.

**DATED** this 26th day of February 2019.

**TERENCE KERN**
**United States District Judge**